MAIN, Justice.
Family Security Credit Union ("FSCU") appeals the trial court's denial of its motions to compel arbitration in eight separate *37 but closely related cases. We reverse and remand.
I. Facts and Procedural History
Action Auto Sales ("Action Auto") is a car-financing group that financed the vehicle inventory of Pine City Auto ("Pine City"), a used-car dealership. Action Auto held the titles to the vehicles in the inventory it financed and released a title only when a vehicle was sold and Pine City paid off a proportional amount of the inventory financing. Pine City eventually went out of business without paying off the inventory financing on some of the vehicles it had sold. Action Auto sued Pine City and the purchasers of eight vehicles who had purchased vehicles from Pine City and financed those purchases through FSCU.[1] Action Auto sought possession of the vehicles and money damages. The purchasers each filed counterclaims and cross-claims against Action Auto and Pine City and third-party claims against FSCU, alleging negligence, wantonness, and conspiracy. The purchasers' third-party claims against FSCU are based on FSCU's alleged failure to perfect its security interest in the vehicles before financing the purchasers of the vehicles. FSCU moved for each of those third-party claims to be submitted to arbitration, and, to support its motions, FSCU attached a copy of a "Retail Installment Sale Contract" and a "Dealer's Assignment and Buyer's Consent to Assignment" that each purchaser had executed when he or she purchased the vehicle. The purchasers opposed the motions to compel arbitration, but they did not submit any evidence. After hearing oral arguments, the trial court denied all eight motions to compel arbitration. FSCU filed these eight appeals, which this Court consolidated for the purpose of issuing one opinion.
As part of the purchase of the vehicle, each purchaser executed a "Retail Installment Sale Contract" with Pine City and a "Dealer's Assignment and Buyer's Consent to Assignment," which assigned the sale contract to FSCU. The "Dealer's Assignment and Buyer's Consent to Assignment" contained the following arbitration provision immediately above the signature lines:
"Any controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration. Dealer and Buyer further agree that any such arbitration shall take place in Morgan County, Alabama. Judgment upon any award rendered by the arbitrator may be entered by any court having jurisdiction thereof. The arbitrator shall determine the prevailing party, and the costs and expenses of the arbitration proceeding, including the arbitrator's fees, shall be borne by the non-prevailing party, unless otherwise required by law. No provision of this Agreement, nor the exercise of any right under this Agreement, shall limit the right of the Credit Union to (1) obtain provisional or ancillary remedies, such as injunctive relief, writ of attachment, or protective order from a court having jurisdiction before, during, or after the pendency of any arbitration; (2) exercise self-help remedies, such as set-off; (3) foreclose against or sell any real or personal property collateral by the exercise of a power of sale under a mortgage or other security agreement or instrument, a deed of trust, or applicable law; (4) exercise any other rights under this Agreement upon the breach of any term or condition *38 herein; or, (5) ... proceed with collection of the account through all other legal methods, including, but not limited to, proceeding in court to obtain judgment. Any and all arbitration under this contract will take place on an individual basis; class arbitrations and class actions are not permitted. DEALER AND BUYER FURTHER AGREE THAT YOU ARE WAIVING THE RIGHT TO TRIAL BY JURY AND TO PARTICIPATE IN A CLASS ACTION."
(Capitalization in original.)
In denying FSCU's motions to compel arbitration, the trial court held that "FSCU's promise to arbitrate is merely illusory and does not serve as valid consideration to support the arbitration agreement" because "the arbitration clause does not preclude FSCU from pursuing several alternative avenues of relief against the borrower, including the filing of a judicial lawsuit," but "requires that borrowers ... settle '[a]ny controversy or claim arising out of or relating to this Agreement' through binding arbitration."
Further, the trial court held that the arbitration provision was unconscionable. Specifically, the court stated:
"In the present case, the terms of the arbitration clause contained in the Assignment are grossly favorable to FSCU. Although consumer debtors such as [the purchasers] are required to arbitrate all disputes they may have against FSCU, FSCU has the option of pursuing several alternative remedies to arbitration, including the filing of a judicial lawsuit. The huge disparity in the rights of the contracting parties is one-sided and unreasonably favors FSCU.
"In addition, FSCU, a large and sophisticated business entity, has overwhelming bargaining power. To obtain the financing needed to purchase a used car from Pine City, [the purchaser] had no choice but to execute FSCU's boilerplate Assignment containing the arbitration clause, along with FSCU's form applications for membership to the credit union and for credit financing.
"Under the circumstances, the used car sales transaction evinces the necessary elements to support a finding of unconscionability. Hence, the arbitration requirement contained in the Assignment should be declared invalid and unenforceable, and FSCU's motion to compel arbitration should be denied."
(Citations omitted.)
II. Standard of Review
" 'This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id."[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n.1 (Ala. 1995) (opinion on application for rehearing).' "
Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) ).
III. Discussion
It is undisputed that FSCU moved to compel arbitration and supported its motions *39 with contracts that were executed by the purchasers and that each contract contained the above-quoted arbitration provision. It was also undisputed that the contracts evidenced a transaction affecting interstate commerce. Thus, the burden shifted to the purchasers to present evidence that the arbitration agreements were not valid or that they did not apply to the disputes in question. The purchasers did not present any additional evidence. They presented only argument. Therefore, unless on its face the arbitration provision is not valid or does not apply to the dispute in question, the trial court's decision to deny the motions to compel arbitration was erroneous.
A. Unconscionability
The trial court held that the arbitration provision in each contract is unconscionable on its face. Concerning unconscionability, this Court has stated:
" 'Unconscionability is an affirmative defense, Green Tree Fin. Corp. v. Wampler, 749 So.2d 409, 415 (Ala. 1999), and the party asserting the defense bears the burden of proof. Ex parte Napier, 723 So.2d 49, 52-53 (Ala. 1998).' Fleetwood Enters., [Inc. v. Bruno,] 784 So.2d [277] at 281 [ (Ala. 2000) ]. In order to meet that burden, the party seeking to invalidate an arbitration provision on the basis of unconscionability must establish both procedural and substantive unconscionability. Blue Cross Blue Shield of Alabama v. Rigas, 923 So.2d 1077, 1087 (Ala. 2005). As this Court explained in Rigas:
" 'Substantive unconscionability
" ' " 'relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.' "
" ' Ex parte Thicklin, 824 So.2d 723, 731 (Ala. 2002) (emphasis omitted) (quoting Ex parte Foster, 758 So.2d 516, 520 n.4 (Ala. 1999), quoting in turn 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed. 1998) ). See also Leeman v. Cook's Pest Control, Inc., 902 So.2d 641 (Ala. 2004).
" 'Procedural unconscionability, on the other hand, "deals with 'procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction.' " Thicklin, 824 So.2d at 731 (quoting Foster, 758 So.2d at 520 n.4, quoting in turn 8 Williston on Contracts § 18:10 ).'
" 923 So.2d at 1086-87."
Newell v. SCI Alabama Funeral Servs., LLC, 233 So.3d 326, 330 (Ala. 2017) (emphasis added).
In the present case, to invalidate the arbitration provision on the basis of unconscionability, the purchasers were required to establish both procedural and substantive unconscionability. The purchasers presented no evidence of procedural unconscionability, i.e., they did not present any evidence concerning the contract-formation *40 process. The argument the trial court found persuasive-that on its face the arbitration provision is grossly favorable to FSCU because FSCU reserved the right to avail itself of the courts while forcing the purchasers to arbitrate every conceivable claim-concerns only substantive unconscionability. Having no evidence of procedural unconscionability before it, the trial court erred in holding that the arbitration provision in each contract is unconscionable.
B. Consideration
Like its holding concerning unconscionability, the trial court held that the arbitration provision in each contract failed for lack of consideration because, allegedly, "the arbitration clause does not preclude FSCU from pursuing several alternative avenues of relief against the borrower, including the filing of a judicial lawsuit," but "requires that borrowers ... settle '[a]ny controversy or claim arising out of or relating to this Agreement' through binding arbitration." This holding was based on the allegation that the arbitration provision lacked mutuality of remedy. However, this Court has stated that, "properly understood, the concept of mutuality of remedy has no application to arbitration agreements." Ex parte McNaughton, 728 So.2d 592, 598 (Ala. 1998). Further,
" '[t]he doctrine of mutuality of remedy is limited to the availability of the ultimate redress for a wrong suffered by a plaintiff, not the means by which that ultimate redress is sought. A plaintiff does not seek as his ultimate redress an arbitration proceeding or a court proceeding. Instead, he seeks legal relief (e.g., damages) or equitable relief (e.g., specific performance) for his injury, and he uses the proceeding as a means to obtain that result.' "
Green Tree Fin. Corp. of Alabama v. Vintson, 753 So.2d 497, 504 (Ala. 1999) (quoting Ex parte McNaughton, 728 So.2d 592, 598 (Ala. 1998) ). Therefore, the trial court's holding was erroneous.
Also, to the extent that the trial court's holding might have been based on the argument that consideration separate and distinct from that which supports the contract as a whole is required to enforce an arbitration provision, this Court has repeatedly rejected that argument. See Vintson, 753 So.2d at 502 n.3.
Although not addressed in the trial court's order, on appeal the purchasers allege that the contract as a whole lacked consideration. This Court has stated:
" ' "A test of good consideration for a contract is whether the promisee at the instance of the promisor has done, forborne or undertaken to do anything real, or whether he has suffered any detriment, or whether in return for the promise he has done something he was not bound to do, or has promised to do some act or to abstain from doing something."
" ' Roberts v. Lindsey, 242 Ala. 522, 525, 7 So.2d 82, 84 (1942) ; Russell v. Russell, 270 Ala. 662, 668, 120 So.2d 733, 738 (1960). "[T]o constitute consideration for a promise, there must have been an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." Smoyer v. Birmingham Area Chamber of Commerce, 517 So.2d 585, 587 (Ala. 1987).' "
Merchants Bank v. Head, 161 So.3d 1151, 1155-56 (Ala. 2014) (quoting Ex parte Grant, 711 So.2d 464, 465 (Ala. 1997) ).
In the present case, the first paragraph of each of the contracts containing the arbitration provision states:
"The Buyer has purchased an automobile from Dealer, both of whom have *41 executed the attached agreement setting forth the Buyer's obligation to pay (said obligation hereinafter 'Contract'). Buyer has executed the Contract in order to purchase the automobile described in the Contract (said vehicle hereinafter 'Vehicle'). The Buyer is a Credit Union member who requests the Credit Union purchase the contract from Dealer so that Buyer may make payments directly to the Credit Union. The Dealer hereby assigns the Contract, to the Credit Union."
Each purchaser executed the contract in order to purchase a vehicle through a loan from FSCU, and FSCU purchased the contracts at the purchasers' request so that the purchasers could make payments directly to FSCU. Those acts constitute valid consideration for the contract as a whole. Therefore, the arbitration provision in the contract does not fail for lack of consideration.
C. Scope of the Arbitration Provision
The purchasers allege that their tort claims against FSCU fall outside the scope of the arbitration provision. "[T]he burden of proving that the dispute falls outside the scope of the arbitration agreement shifts to the nonmovant after the movant proves the existence of a contract containing an arbitration provision and that the transaction that is the subject of the contract had an impact on interstate commerce." Edwards Motors, Inc. v. Hudgins, 957 So.2d 444, 447 (Ala. 2006). "Whether an arbitration provision encompasses a party's claims 'is a matter of contract interpretation, which interpretation is guided by the intent of the parties, and which intent, absent ambiguity in the clause, is evidenced by the plain language of the clause.' " Vintson, 753 So.2d at 505 (quoting Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102, 110 (Ala. 1995) ). This Court has stated:
" ' "[There is a] strong presumption in favor of arbitration" created by the Federal Arbitration Act. See, generally, Blue Cross Blue Shield of Alabama v. Rigas, 923 So.2d 1077, 1083 (Ala. 2005). "In interpreting an arbitration provision, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' " The Dunes of GP, L.L.C. v. Bradford, 966 So.2d 924, 927 (Ala. 2007) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ) (emphasis omitted). Indeed, " 'a motion to compel arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." ' " Id. (quoting Ex parte Colquitt, 808 So.2d 1018, 1024 (Ala. 2001), quoting in turn United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ) (emphasis omitted). "While, 'as with any other contract, the parties' intentions control, ... those intentions are generously construed as to issues of arbitrability.' " Carroll v. W.L. Petrey Wholesale Co., 941 So.2d 234, 237 (Ala. 2006) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ).' "
Green Tree-AL LLC v. White, 55 So.3d 1186, 1192 (Ala. 2010) (quoting Kenworth of Mobile, Inc. v. Dolphin Line, Inc., 988 So.2d 534, 544-45 (Ala. 2008) ).
In the present situation, the contract states: "Any controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration." This *42 Court has stated that "the phrase 'any controversy or claim arising out of or relating to' in arbitration agreements covers a broad range of disputes." Vann v. First Cmty. Credit Corp., 834 So.2d 751, 754 (Ala. 2002). In fact, " '[t]his Court has held [that] where a contract signed by the parties contains a valid arbitration clause that applies to claims "arising out of or relating to" the contract, that clause has a broader application than an arbitration clause that refers only to claims "arising from" the agreement.' " Vintson, 753 So.2d at 505 (quoting Reynolds & Reynolds Co. v. King Autos., Inc., 689 So.2d 1, 2-3 (Ala. 1996) ).
The purchasers claimed that FSCU negligently and wantonly deprived them of clear title to their vehicles and that FSCU, Action Auto, and Pine City conspired to deprive them of clear title to their vehicles. The purchasers alleged that the purchases of their vehicles were "financed by a purchase money loan obtained from [FSCU], which loan was secured by an alleged lien on the [vehicle] in favor of [FSCU]," and that FSCU failed to perfect its security interest in the vehicles by failing to ensure that title was properly applied for and issued by the State of Alabama for the purchased vehicles. The purchasers further alleged that they were damaged by being required to "pay[ ] loan on vehicle without clear title." Those claims against FSCU clearly "aris[e] out of or relat[e] to" the contract containing the arbitration provision. All the claims relate to the title of the vehicles purchased through contracts that were assigned to FSCU through the agreements containing the arbitration provision. Without the agreement containing the arbitration provision, no relationship as to the vehicles would exist between the purchasers and FSCU. Accordingly, the broad language of the arbitration provision encompasses the purchasers' claims against FSCU.
D. Jury Waiver
Finally, although not mentioned in the trial court's order, the purchasers make the argument on appeal that "the lack of any valid jury trial waiver provides another viable basis for the setting aside of the Assignment's arbitration requirement." Purchasers' brief, at 54. They further argue:
"Although a party may contractually waive his or her fundamental right to a jury trial, such a waiver must be narrowly and strictly construed. Ex parte Cupps, 782 So.2d 772, 775 (Ala. 2000). The court is to 'indulge every reasonable presumption against waiver.' Aetna Ins. Co. v. Kennedy ex rel. to Use of Bogash, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937)."
Purchasers' brief, at 54-55.
However, the purchasers' argument confuses jury-waiver provisions, like the one at issue in Ex parte Cupps, 782 So.2d 772 (Ala. 2000), and the other cases cited in the purchasers' brief, and arbitration provisions, like the one at issue in the present case. This Court has previously recognized the distinction between those two types of provisions: "[A]nalogy [of jury-waiver provisions] to arbitration cases is inappropriate because of the inapplicability of the Supremacy Clause of the United States Constitution based on cases from the United States Supreme Court construing the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and the resulting application of opposite presumptions in interpreting arbitration and jury-waiver provisions." Ex parte Carter, 66 So.3d 231, 239 (Ala. 2010) (plurality opinion); see also Ex parte Carter, 66 So.3d at 241 (Murdock, J., concurring in the result) ("I agree with the skepticism expressed in the main opinion as to the appropriateness of analogizing principles distilled from arbitration cases to cases involving jury-waiver provisions. As the *43 main opinion notes, the Supremacy Clause of the United States Constitution applied in relation to cases construing the Federal Arbitration Act, 9 U.S.C. § 1 et seq., on the one hand, and the constitutional right to a trial by jury, on the other hand, result in 'opposite presumptions in interpreting arbitration and jury-waiver provisions.' ").
The issue before us is whether the trial court erred in denying FSCU's motions to compel arbitration under the arbitration provision in the "Dealer's Assignment and Buyer's Consent to Assignment." No issue concerning a jury-waiver provision is properly before this Court. Therefore, this argument does not present a basis on which to affirm the trial court's judgment.
IV. Conclusion
Based on the foregoing, we conclude that the trial court erred in denying FSCU's motions to compel arbitration. Accordingly, we reverse the trial court's judgment and remand these cases for proceedings consistent with this opinion.
1151000-REVERSED AND REMANDED.
1151001-REVERSED AND REMANDED.
1151002-REVERSED AND REMANDED.
1151003-REVERSED AND REMANDED.
1151004-REVERSED AND REMANDED.
1151005-REVERSED AND REMANDED.
1151006-REVERSED AND REMANDED.
1151007-REVERSED AND REMANDED.
Stuart, C.J., and Parker and Bryan, JJ., concur.
Bolin, Murdock, and Shaw, JJ., concur in the result.

Those purchasers are Richard W. Etheredge, Kendrick M. Nettles, Wanda J. Pezent, David Moore, Martha H. Dunagan, Gene McClure, Kayla N. Williams, and Dana Dunn and Timothy Dunn, the appellees in these appeals. Action Auto sued each purchaser, along with Pine City, in a separate case.